# Lightcap's Appeal.

1. Where executors unite in an account they are conclusively presumed to be liable for cash balances, shown by said account, but they are not liable for uncollected securities which appear in said account and for which credit is taken therein.

2. Where securities are taken in the name of executors and afterwards collected by one of said executors the others are not liable to the legatees therefor, in the absence of proof of culpable negligence.

3. Whether when a cash balance is shown by a joint account and a decree therefor made against the executor it is a lien against his real estate, not decided.

October 15th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1880, No. 177.

Appeal of Samuel Lightcap and others from the decree of the court upon the exceptions to the final account of Samuel L. Robinson, deceased, one of the executors of Gilson C. Lightcap, Sr., deceased, filed by Maria Dempsey, administratrix of the estate of Samuel L. Robinson, deceased.

Gilson C. Lightcap, Sr., died on the 28th of January 1865, testate. In his will he ordered and directed, inter alia, that all his real estate should be sold by his executors, " and the proceeds arising from the sale of my said real estate, I order and direct to be invested by my said executors, in some safe and good securities at the best rate of interest that can be had therefor ;" that the interest be expended by his executors for the support of his wife and two youngest children until they arrive at the age of twenty-one years respectively ; that when the youngest of them arrives at the age of twenty-one years, two-thirds of the principal be lifted by his executors and divided among five of his children, and the remaining one-third be kept at interest for the support of his wife until her death, and at her death, to be lifted and divided among his five children aforesaid. He appointed Gilson C. Lightcap, Jr., Samuel L. Robinson and S. B. W. Gill as his executors.

On the 15th of February 1865, the said three executors jointly accepted letters testamentary, and proceeded to administer on the estate. In pursuance of the power vested in them by the will, the three executors sold all the real estate. They executed joint deeds therefor to the purchasers. They received a portion of the purchase-money in cash, and receipted jointly therefor in the deeds. They took purchase-money mortgages to secure the balance in their joint names. After they had thus disposed of the whole estate, they filed a joint account at December Term 1866, charging themselves, among other things, with the proceeds of the real estate sold, viz. : $23,790, and crediting themselves, inter alia, with the

amount of the mortgages not yet collected, viz.: $14,018.33, their commissions, viz.: $1281.91, and showing a balance in cash in their hands amounting to $4170.37. After the filing of this account, it appeared that Robinson and Lightcap, Jr., turned over to Gill all the assets of the estate, and without surrendering the letters granted to them, ceased to pay any attention to the estate, or, in the words of Lightcap, Jr., the other executor, "Mr. Robinson never officiated unless he was called upon to sign his name to any paper he might be called to sign; that was the only part he took, when he was called upon to sign his name, and, of course, when we wanted to consult him on other business sometimes."

As the mortgages became due, Gill received the money and entered satisfaction on the record in his own name. In this manner he collected before the death of Robinson, in the year 1866, $3475; in 1867, $3753.50; in 1868, $4658.83; and after the death of Robinson in 1876, $1425, leaving but a portion of one mortgage unpaid. That portion, viz.: $125, was received on December 19th 1877, by Lightcap, Jr., the then sole remaining executor.

There was no proof that any of this money was ever invested as ordered by the will, or that Robinson ever made any inquiry as to whether it had been collected, or as to what had been done with it, or that any interest (or, if any, how much) was ever paid to the party entitled thereto. Robinson died on August 5th 1870, intestate. His widow, the accountant, became his administratrix. Gill absconded in September 1877, carrying with him all of the cash and other available funds of the estate. By proceedings he was removed from the trust. In May 1878, Samuel Lightcap, the youngest child, arrived at age, and two-thirds of the estate was then distributable according to the will. Upon petition, the Orphans' Court directed Lightcap, Jr., the sole remaining executor, and Mrs. Maria Dempsey (formerly Robinson), administratrix of Robinson, deceased, to file separate accounts, but this not to affect the joint liability of the executors. Mrs. Dempsey, for her intestate, filed an account, setting forth that nothing had come into her hands, and crediting herself with the expense of filing the account. Upon exceptions filed thereto, after argument, Hawkins, P. J., made a decree surcharging Robinson's estate with the cash balance shown by account filed at No. 63, Dec. Term 1866, viz.:    $4170.37
and interest from Oct. 1st 1876, to Jan. 28th 1880,          833.24

Total surcharge,          $5003.61
and limited the foregoing surcharge to the personal estate of Samuel L. Robinson, deceased. The following was the opinion and decree of the court:—

"No cases have been found against, and many may be found in favor of, the doctrine that where two or more executors unite in an

account, they are conclusively presumed to be jointly liable for the balance which appears in such account: Haage's Appeal, 5 Harris 190; Ducommon's Appeal, Id. 268; Hengst's Appeal, 12 Id. 419. By uniting, they voluntarily hold themselves out as jointly liable, and the decree of confirmation thereon is an adjudication of joint liability. But does the effect of their admission and of the decree as respects joint liability extend beyond the cash balance and include securities which appear on the face of the account as being uncollected assets? Suppose for example one of several joint accountants should die immediately after the decree of confirmation had been entered, is there any principle of equity upon which his estate can be surcharged with uncollected securities in the absence of positive proof, that they have been 'culpably and negligently parted with?'

" The manifest purpose of bringing uncollected securities, such as mortgages into accounts, is to exhibit to parties interested, the condition of the estate and the progress of the administration. The accountants thereby admit joint custody of them and assert that administration of them has not been completed. They charge and discharge themselves. No new liability is created or intended to be created; it remains the same after as before the account was filed. With respect to the cash balance joint liability may or may not have existed prior to filing the account.

" What then was the extent of the liability of executors of G. C. Lightcap, deceased, prior to filing their account?

" It is an established rule that executors 'are liable personally and individually no further than assets have come into their hands, and where they have done some act which the law considers as equivalent to an admission that the assets were in their hands and power, and culpably and negligently parted with:' Hall v. Boyd, 6 Barr 270; Irwin's Appeal, 11 Casey 294. It has accordingly been held that where a co-trustee who does not receive the money, consents that the others shall misapply it, particularly where he has the power to secure it, he is responsible: Pain v. Downing, 11 S. & R. 71; and that an executor who receives money of the estate and pays it over to a co-executor, who afterwards becomes insolvent, is not chargeable with it in favor of legatees: Verner's Estate, 6 Watts 253. So, on the same principle, in Jones's Appeal, 8 W. & S. 141, it was held that where joint guardians in good circumstances and standing, apportion the custody and management of the trust property to suit the peculiar qualifications of each, but without surrendering the right of either to intermeddle with the whole, each is chargeable with no more than he actually received, unless he knowingly permitted or promoted a *devastavit* of the estate by his colleague.

" The evidence does not show that the uncollected mortgages were 'culpably and negligently parted with' by Mr. Robinson.

[Lightcap's Appeal.]

Assuming that Mr. Gill had power to satisfy these mortgages, and that Mr. Robinson knew and authorized the exercise of that power, the circumstances were such as to have induced and justified the latter in reposing confidence. Mr. Gill had been the attorney and trusted adviser of the testator, who had, by appointing him co-trustee with, recommended him to the confidence of Mr. Robinson: Irwin's Appeal, *supra ;* he was believed to have special skill and advantages in making investments; he was in good standing in the community until after he had absconded; he was the acting executor, with the knowledge and without objection on the part of the legatees; and no one appears to have called on Mr. Robinson for the exercise of any of the duties of the trust, from the date of the death of the testator onward. Nothing could have been more natural under the circumstances, than that the exercise of the duties of the trust should have been left to Mr. Gill. In trusting him the assets were surely not ' culpably and negligently parted with.' Any rule which would make his co-trustees jointly liable with him would be harsh and unreasonable: Hall *v.* Boyd, *supra.* But the evidence does not show that Mr. Robinson in fact knew and authorized specially the satisfaction of any one of the mortgages. He certainly did not join in the satisfaction of record. Had there even been a general authority to satisfy mortgages, it seems that it would have been insufficient: Bohlen's Estate, 25 P. F. Smith 304. If the law gave Mr. Gill power to satisfy without and notwithstanding his co-trustees, it is but just that he alone should be made responsible; if he had not the power (DeHaven *v.* Williams, 30 P. F. Smith 480,) the estate has not lost anything by the act of Mr. Robinson. The assertion of the duty of the executors to unite in the execution of the trust, is a denial of the power of any one of the executors to act alone.

" Nor does the evidence show that Mr. Robinson even suspected, much less permitted or promoted *devastavit* by Mr. Gill. It was said in Irwin's Appeal, *supra,* that to require one trustee ' to have dealt with his colleague as a rogue by calling for securities, would require of him the highest and most exact vigilance—a degree of it that was inconsistent with the relation which the testator had established betwixt them.'

" The rule which permits one of several executors to perform the duties of administration, and holds him alone responsible for his acts, does not depend for its validity on the consent of *cestuis que trustent,* but is an arbitrary rule whose application grows out of the conduct of the executors themselves. Jones's Appeal, *supra,* was decided as it was, notwithstanding the *cestuis que trustent* were minors, and, therefore, incapable of giving consent at the time at which their guardians made the agreement to sever in

the management of the estate and divide the assets between them.

" Whether the Statute of Limitations is a bar to the claim of the cash balance shown by the joint account filed by the executors against the estate of Mr. Robinson depends upon circumstances. More than five years having elapsed since his death without suit having been brought or statement filed, the statute is a bar as against the real estate of decedent : Act of February 24th 1834, sect. 24, Pamph. L. 77. But there is no Statute of Limitation which can affect the right of a creditor of decedent to undistributed personal estate : McClintock's Appeal, 5 Casey 360. The exceptants then are only entitled to pursue the personal estate of decedent for the balance of cash shown by the joint account filed with interest thereon, from the time when distribution should have been made. If the estate of the decedent has been fully administered the exceptants are, as a matter of course, without remedy.

" And now, to wit: June 2d 1880, this matter came on for hearing and distribution, at this term upon exceptions thereto and testimony taken, and was argued by counsel, and thereupon upon consideration thereof, it is ordered, adjudged and decreed, that the accountant be surcharged with the balance shown by account filed at No. 63, December Term 1866, viz., $4170.37, and with interest from October 1st 1786 to January 28th 1880, $832.24 ; total surcharge, $5003.61. The foregoing surcharge is limited to the personal estate of Samuel L. Robinson, deceased."

From this decree this appeal was taken, the appellant alleging 1st. That the court erred in not surcharging the accountant with the money collected by Gill on the mortgages in addition to the cash balance, and 2d. In limiting the surcharge made to the personal estate of Samuel L. Robinson, deceased.

*Lewis McMullen* and *J. T. Myler*, for appellant.—It is evident the executors recognised at the beginning the joint obligation cast upon them by the terms of the will, as they acted jointly in the sale of the real estate, making joint deeds therefor, giving joint receipts for the purchase-money, receiving the mortgages, securing the balance of purchase-money in their joint names, and finally by filing a joint account, in which they charged themselves jointly with the balance due the estate in cash and securities, and credit themselves jointly with the sum they charge as a compensation : Weigand's Appeal, 4 Casey 473 ; Hengst's Appeal, 12 Harris 417. If for the convenience of themselves, as Gilson C. Lightcap, Jr., testified, they saw proper to trust the whole estate in Gill's hands, and he wasted it, the loss is theirs, and not the legatee's : Weigand's Appeal, *supra ;* Ducommon's Appeal, 5 Harris 268.

The second assignment raises the question as to whether or not

[Lightcap's Appeal.]

the claim in this case is barred as against the real estate of Samuel L. Robinson, in the hands of his heirs, by the twenty-fourth section of the Act of February 24th 1834, Pamph. L. 77. We think not, for three reasons : 1. Because the nature of the claim is such that it is not within the meaning of the word " debt" as used in the statute. The trust raised by the will of Gilson C. Lightcap, deceased, was a continuing existing trust between the executors and the heirs. 2. When the joint account filed by the executors was confirmed by the court the balance became a debt of record in the nature of a judgment within the meaning of the word "judgment" in the statute. If it is such a debt of record or judgment that the statute would not run against in the lifetime of the decedent, then it is without limitation as against the heirs, or the real estate in their possession, they not being purchasers for value : Fetterman *v.* Murphy, 4 Watts 424 ; Brobst *v.* Bright, 8 Id. 124 ; Wells *v.* Baird, 3 Barr 351 ; Konigmaker *v.* Brown, 2 Harris 269 ; Aurand's Appeal, 10 Casey 151. 3. Under the will the claimants had no legal right to any portion of this trust fund until Samuel Lightcap arrived at twenty-one years of age. They had no legal right to demand or receive any part of the estate until May 1878 : Haage's Appeal, 5 Harris 181 ; Hengst's Appeal, *supra.*

*George Shiras, Jr.,* for appellee.—In ruling that Robinson's estate was not liable for moneys collected by his co-executor, the court relied upon the rule laid down in the following cases : Hall *v.* Boyd, 6 Barr 270 ; Irwin's Appeal, 11 Casey 294 ; Verner's Estate, 6 Watts 250, and Jones's Appeal, 8 W. & S. 143, that executors are liable personally and individually no further than assets have come into their hands, and where they have done some act which the law considers as equivalent to an admission that these assets were in their hands and power and culpably and negligently parted with. But even if the decree as to the balance was regarded as a judgment, the twenty-fifth section of the act of 1834 would apply, and, as nearly fourteen years had elapsed from the time of said decree before the institution of the present or any proceedings, the lien as against real estate has long since fallen. The argument that Robinson's estate is not entitled to the benefit of the Act of 1834, because he was a trustee, is based on the assumption that he actually received these moneys and retained them, whereas the undisputed evidence is that he neither received nor retained them.

The judgment of the Supreme Court was entered, October 25th 1880,

PER CURIAM.—We affirm this decree upon the opinion of the learned judge of the court below, except as to so much of the opinion and decree as relates to the question whether the amount

[Lightcap's Appeal.]

decreed against the appellee was or was not a lien against the real estate of Robinson. Upon that question we express no opinion, as we do not think it was before the court. When it is asked to make an order to sell the real estate it will then be necessary to consider and decide that question.

> Decree affirmed except the last clause, "The foregoing surcharge is limited to the personal estate of Samuel L. Robinson," which is reversed, and appeal dismissed at the costs of the appellants.